The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez. All persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit are admonished to try and give their attention, for the Court is now sitting. God save the United States and this honored Please be seated. Good morning. Welcome to the Fourth Circuit Court of Appeals. Let me just start by taking a point of personal privilege to say, this is an unusual situation for me to be sitting in the middle and to my left, Judge Motz, who's taking senior status. I'll say that, Judge Motz, because if it finds during the proceeding, I hesitate for Judge Motz to act, it's because I've been doing it for the last 12 years. And now it's a new thing for me. So with that, we will begin our proceeding today and start with the first case on the calendar, Alvarado v. Garland. And we will hear from the appellant. Good morning, Your Honors. May it please the Court. My name is Daniel Tolman and I represent the petitioner Manuel Oriana Alvarado in today's case. Mr. Oriana Alvarado raises essentially three primary issues for this Court to consider. The first is whether the Board's decisions in this case, there were two decisions, are void ab initio because each of them involved at least one temporary Board member who was serving at the time beyond their authorized six-month term, which is a violation of 8 CFR 1003.1A4. The second argument relates to the merits of the actual decisions. The Board in this case in its first decision sustained an appeal by the government following the immigration judge's grant of his application for withholding of removal. And we feel that that decision itself was incorrect, as well as the second Board of Appeals decision, which affirmed the first one. So we take issue with the merits of both of those for different reasons. And finally, we believe that the Board incorrectly denied the petitioner's application for relief under the Torture Convention in the second appeal, which followed the remand from the first time around. So I'd like to begin with the... Can I... Yeah, of course, Your Honor. Over here, sorry. Sorry. Can I add a fourth question to that? Yes, yes. Which is the government's recent 28-J letter about jurisdiction. You haven't had an opportunity to respond to that, and it seems like a thorny question that we may have to resolve before we resolve any of these other questions. I wanted to give you a chance to mention it. Thank you, Your Honor. I appreciate that. As Your Honor points out, the 28-J letter was received two days ago. So no, I've not had an opportunity. Obviously, we are amenable to supplemental briefing should the court desire it. But I will say regarding that issue, just a few things. It has been the longstanding precedent in this court and other courts that this is the way that you challenge reinstatement. You have to go through this process. This court and just to say... I'm sorry, I can't really... I can't hear or understand what you're saying. I'm sorry, Your Honor. I'm not close enough to the mic. Well, I just couldn't understand it. I could vaguely hear it, but I couldn't understand  I apologize, Your Honor. No, it's all right. I've adjusted the microphone, so hopefully that helps. Okay, perfect. So no, we haven't had a chance to respond. We're amenable to supplemental briefing. It has been the longstanding precedent of this and other circuits that this is the procedure by which you challenge a reinstated order. For example, in Mejia v. Sessions, 866F3R573, this court in 2013 entertained an appeal that was filed in the exact same way, similar posture of case. And just recently and following Patel in 2022, Tomas Ramos v. Garland, 24F4973. It's the same thing. This is the way it's always been done. But the concern, right, is that the Supreme Court in Nasrallah said, maybe that's not, maybe what we're doing is not right and it's jurisdictional. So we have to address it whenever it comes up. And again, Your Honor. Because we can't assume that in cases where we haven't addressed it, we can't assume that it was actually considered, right? Correct, Your Honor. And in a case, unfortunately, right now, the citation escapes me because it was my own case. And around 2015 or 16, the Seventh Circuit actually granted the government's motion to dismiss a petition for review that I filed 30 days following the actual final administrative order. And the basis for the denial was that we were still holding the proceedings and we had to wait until it went to the board. But I understand Your Honor's point. And actually, the arguments raised in Patel were exactly my arguments at that time. But, well, again, adding the supplemental briefing might be helpful. But additionally, Your Honor, it represents a very strong departure, a very 180 degree turn from what's always been done in every circuit. And the presumption of reviewability would be eviscerated if the court adopts the Patel reasoning. And the reason for that is that realistically, the timing of these decisions, the way that petitioners are informed of an outcome of a negative finding or the issuance of a removal order often extends beyond the 30 days. So by the time they even find out that they're actually going to be removed, they have no time to appeal the date of issuance of the order controls. And additionally, nothing in the record in this case, I did check this over last night, nothing in the record in this case shows that any of the decisions that were handed to them, the notice of reinstatement, the finality of the reinstatement, none of those advise them of the need to file a petition for review within 30 days. So if petitioners are issued these notices, they are not told that they need to file within 30 days. And the reasoning would eviscerate the presumption of reviewability. But again, supplemental briefing would be, if the court wishes, would be a better way to address this. If I may move on to the first argument, which again is, well, essentially the concept that these decisions, the first one by a three-judge panel that was issued March 29, 2021, the panel included one board member, Pepper, who at the time was a temporary board member that was serving beyond her appointment of six months. The second decision was December 21, 2021. That was a sole panel consisting of Judge Liebman. Is your point here that when you look at the A4 and you look at the 10E, because that word renewable is there, that that first one that you are dealing with only deals with just one time, you could be six months? Yes, Your Honor. But now, you know, that was done back in 1998, that first one. Then it come back in 2014, and in an act, just one renewable. So how does that work? I mean, you know what the practice has been. It's just like what you said on the jurisdictional thing. I mean, you know what's been going on. Now you're saying, you're sticking the word renewable, and somehow something you've been doing all the while now has been informed by the subsequent action. How is that possible? Well, Your Honor, there's a couple of reasons. Maybe, but how strong are you? Yes, I am. How much time do you really want to spend on it? Well, the first thing that I'd like to say in response is that when they added renewable, it's important to keep in mind, when they do these regulations, they generally track each other. They're very similar language when it comes to immigration judges and board members. But you know what, how these things are working. They are trying to get some help on these boys that have been doing this. Put someone up there six months, and then that's it. You got to go I guess you'd say you can't even use those people again. Maybe not in line or whatever. But anyway, well, go ahead if you want to go in this direction. I'm just saying that looks pretty compelling to me. I mean, if you'd had that first one there, and then the second one comes up, I got it. But this thing had been around for what, 16 years, and all of a sudden, then they do this and put renewable, and you now say, well, you can't do it. Well, Your Honor. And is anybody else here with that? Your Honor, this issue has come up in some other circuits. Has anybody else held it? Has anybody agreed with you? Not yet, but it has not been argued in this way yet, as far as I'm aware, at least in the decision. And Irineo Cuenca Brito versus Garland in the Seventh Circuit, I actually had that case as well. The court declined to consider this issue. However, I did not raise the issue of the non-renewability at the time. It's a new issue that has come up, and I've since learned from colleagues a bunch of different approaches that they've been using in their cases. So that's a key difference. I think it's pretty well understood, as far as the way you're going. We're either going to do that or not. It's kind of where... So, Your Honor, if I may, to go back to what you're asking about, to me, the more compelling thing is that in 2014, they added renewable to the temporary immigration judge provision, but not the board member. It's right there. They know what they're doing. They could have done that if that was their intention. And, Your Honor, since you mentioned 16 years have passed prior to that, 10 years prior to that, the rule said for whatever term necessary. So that 16-year mark that Your Honor references actually included a limitation saying, you know what, whatever term necessary, we don't need that. It's going to be six months. And then they go back 16 years later and say, you know what, we're going to let these guys renew, but not them. To me, that's the compelling and proper way to interpret the regulatory history. And, Your Honor, if it was an oversight on their part, the record could reflect that and they could have easily amended it at any point between then and now. This is an issue that just started coming up recently with the... Speaking of how recently this came up, did you raise this in front of the board? Oh, well, so, no, we did not, as a matter of fact. And there's a few reasons for that, which I think we discussed a little bit in our reply. Does that prevent us from considering it? No, Your Honor, it does not. However, I would like to point the court's attention to Santos-Zecaria versus Garland, which is pending at the United States Supreme Court addressing the very issue of whether a motion to reconsider is required. The docket number... That's not really the question here. The question here is we addressed in Cabrera in our decision, right, that you have to raise an issue in front of the board at least once to have exhausted it. You don't have to file a motion to reconsider in every case. The court, the board doesn't have to reconsider something that's already been presented to it. But we said, you have to raise it at least once in front of the board, whether that's before they rule or after they rule. At some time, they have to be apprised of it before you can bring it here because of the exhaustion requirement. Thank you, Your Honor. And the problem in this particular situation, and specifically, or more clearly with the second decision, December 21st, 2021, that was a one-judge panel. That's who the reconsideration gets reassigned to. So if that person is serving without authority, then what is the point of asking that same person to reconsider whether they should have stepped down, whether they should have heard the case in the first place? It would be a futile motion. So... They would reassign it if they agreed with you. I mean, are we allowed to make exceptions to this statutory exhaustion requirement? I believe so, because the due process issues involved were denied in this case. I mean, due process was denied. The decision was handed down by somebody who did not have the authority to hand it down. And the agency is just completely sidestepping the due process requirement that a duly appointed board member be the one that adjudicates their case. Maybe if you had mentioned that to the board, they would have agreed with you and put someone else on the case, or change the way they do these appointments. The way that the cases are assigned, as I understand it, essentially, it does not go to a full panel to then decide who's going to do this. It would go back to the same board member that issued the decision, and they would be the ones that would have to perceive a conflict. And honestly, if that board member were to perceive a conflict, they would have stepped down before issuing the decision in the first place. So I think in this case, reconsideration would have been futile. And as far as the other appeal, at the time, we filed our first petition for review for following the first decision, that was one judge out of three. It was the government that appealed the decision that time. And that appeal was sustained. I'm sorry, the government appealed the judge's decision, and then that was sustained and handed back down. In the appeal of that, there really wasn't an appeal of that on our side. We filed a petition for review. That was the first shot that we could get at doing that, because the case had been remanded for consideration of additional non-discretionary relief, relief from the Convention Against Torture. So at that point, there was no way to raise it to the board. The petitioner, who, again, has been detained for over four years, could, I mean, I guess they could have delayed their proceedings even longer by going back to the board to challenge the involvement of Judge Pepper in the first decision. But they had their remand. They'd been granted withholding of removal. And it was just to consider whether they'd be granted relief from the Convention Against Torture. And then that's how we get into the merits issues. Well, counsel, speaking of the merits issues, you've spent all except one minute of your time not on the merits issues. Yes, Your Honor. The very best you get out of all these other issues is to go start again on the merits, right? Basically... So that if your client has been detained for all this time, I would think that you would be jumping right into those merits issues. And Your Honor, that's a good point. And I'd like to use my remaining 45 seconds on the merits, if that's okay. The... You have five minutes in rebuttal. If you want to use that, you can do that. I can add my rebuttal time. And may I transfer three minutes from the rebuttal? Yes. Yes. Thank you. I appreciate that, Your Honor. Thank you for the heads up. Just remember to come to rebuttal. Yes, of course. So in terms of the merits, and first of all, Your Honor, regarding what happens next, the relief at issue is non-discretionary. So if this court finds that the board reached incorrect decisions regarding the merits of the case, it can simply reverse the orders. And that... Keep in mind that the initial judge, the immigration judge in the case, the one who heard all the testimony, granted withholding of removal. And so essentially, we'd be going back to that decision. This court can find that everything since then has been flawed, and that that judge's decision for non-discretionary relief should stand. So this court can actually grant the petitioner the relief that he sought in the first instance, withholding of removal under AUSC 1231B3. And we'd be done. That would resolve everything. The court, of course, can remand the case for reconsideration or a new decision by different board members, but it also does have the option to grant the relief. And the reason the relief should be granted primarily turns on the factual misunderstanding by the board regarding one incident in particular. The petitioner had been a taxi driver who was forced by the MS-13 to perform work for them. And he did not want to do that anymore. He told them, I don't want to do this anymore. He saw them interacting with the police and handing them drugs and hanging out with them, uniformed officers. He didn't want to be a part of it. So he informed them of that, and they told him, well, you stop driving, we'll kill you. And then one day he stopped driving. They came and checked on him after a couple of days. What's going on? Why aren't you driving? He resumed driving. Then he stops again, and the same thing happens. And finally, after a relative is murdered, he decides he needs to flee the country. So he flees the country, comes to the U.S., he is detained, he is removed. Three years after he left in the first place, he is spotted by members of the MS-13 that he recognized from the old neighborhood. They recognize him. They approach him. They tell him, you shouldn't be here. We're going to disappear you or kill you. And then this is where the key thing happens. There's apparently some sort of meeting going on. He sees people going up the hill, other MS-13 members. He thinks there's a meeting or something. And he says very clearly in his testimony and in his declaration that he thought that was the only reason, that the meeting was the only reason he was able to flee with his life, the only reason they did not kill him that day. And however, on appeal, the board took those same facts and somehow inexplicably felt that the meeting was the only reason they told him he couldn't be there, which is the opposite. He was recognized three years later. What's to stop them from recognizing him three years after that happened now if he is sent back? So his life is in danger. The judge's initial determination was correct. And this court should overturn the board's decisions in this case. Thank you so much. I appreciate the extension of time. Thank you. Thank you for respecting the time. Bless you. We will now hear from Ms. Stokas remotely. Good morning, Your Honors. May it please the court. My name is Jessica Stokas, and I represent the United States Attorney General. First, I'd like to thank Petitioners' Counsel and the court for their flexibility and understanding due to my unforeseen illness this week. Thank you for allowing me to appear virtually. The court should dismiss or deny the petition for review in this case. First, with respect to the 28J letter filed this week regarding Nostralgia, the government's position, I acknowledge, has changed due to the Supreme Court's instruction in Nasrallah regarding what is a final order of removal and what is not a final order of removal, which would include withholding only proceedings. I do agree that this court could likely benefit of supplemental briefing on that issue to address its jurisdiction. Obviously, this court has to determine its own jurisdiction, and should the court determine that it needs to address its jurisdiction in this case, and whether it has jurisdiction, given that this stems from a reinstatement order, and withholding only proceedings. Certainly, I do think that this court could benefit of supplemental briefing. However, the government also understands that given the late hour that this issue has been raised, and that this does represent a change in the government's position, that alternative to outright dismissal, this court should deny the petition for review and clarify simply that for future cases that withholding only denials should only be reviewed if the petition for review is filed within 30 days of the reinstatement order. Can we actually do that? I know there are courts that say we can assume statutory jurisdiction, but it seems like the Supreme Court has spoken loud and clear in Steel Company that we cannot assume jurisdiction, whether Article III or statutory, that if we don't have jurisdiction, we can proceed no further. Yes, Your Honor. I'm not sure we can just assume it and deny on the merits, as you suggest. I understand the concern there, Your Honor. Yes. Yes, simply because this was a kind of a late in the game position change on behalf of the government. Certainly, we don't want to come across as being unfair to Petitioner's Council or to the petitioner in this case. I believe that the first petition for review in this case was taken in, was it 2018 or 2019 before Nasrallah? Certainly jurisdiction. It's a tricky issue. It's a complicated issue. So if this court does feel it needs to address its jurisdiction given Nasrallah and what does and does not constitute a final order of renewal for purposes of jurisdiction, I would ask the court to allow for supplemental briefing on that issue. Does this question in terms of jurisdiction basically represent, maybe from Petitioner's perspective, a sea change in the law? In other words, is it a major change from the way we've done things and other circuits have done it? Yeah, Your Honor. I believe it would. The government's position in the past has been that the petition for review can be taken from the board's decision even following reinstatement orders. Nasrallah changed that and Nasrallah- Because if we go this way saying the Supreme Court is telling us to do it, it doesn't appear to be that direct of a determination by the Supreme Court with a consideration of what it is. And if the Supreme Court wants us to do that, it certainly can have an opportunity. But the whole business of whether we can assume, particularly when we're dealing with a matter that potentially if we chose to deny it, I don't know what that means or how that's going to impact on it. But to make a sea change in the law like this of a circuit based upon the way we read a Supreme Court's case that potentially holds this, it just seems like it would be kind of drastic at this point. And as you said, even you, I mean, you put in this letter and it's like last minute now. It sort of changes the way we do all business that we're doing. We're going to write an opinion based upon this 28-day letter sent to us right here now, and we get supplemental briefing. I don't know what we get on it. The results of it are just enormous. And I'm not sure that was even or has been considered. Maybe the Supreme Court wants it to be that way. I don't know. But for us to do it seems kind of drastic. Yes, Your Honor. Again, I understand the concerns. And certainly this is a change. And it's simply based on the reading of Nasrallah. I will note that two other courts have held that as the Second Circuit and the Fifth Circuit have since held that a petition for review must be taken within 30 days of the reinstatement order because of the way the Supreme Court explained what constitutes a final order of removal and what is not included in that. So it's strictly a reading of the statutory text and the Supreme Court's kind of drawing of lines between what a final order of removal is and what withholding only proceedings are, which are not part of the final order of removal. However, again, it is a sea change. It is a change in how things would be done. And therefore, I do think that supplemental briefing could assist this court greatly. Regarding the second issue that petitioners raised, first, I would state that government agrees that this court does not have jurisdiction to consider the board member's authority to issue orders in this case, first, because petitioner did not exhaust the challenge before the board. I believe it was Cabrera where this court said that the petitioner must first raise an issue to the board in the first instance, whether it be in a direct appeal or in a motion to reopen or reconsider so that the court may consider the issue on petition for review. That issue is before the Supreme Court at this time, but even if this court could consider the issue, even if it was exhausted or exhaustion was not required, the petitioner lacks standing in this case to challenge the temporary board member's appointment because the regulation that allows for their appointment concerns the board's organization management and internal procedures and does not create any enforceable rights. The respondent's brief pretty thoroughly addresses the lack of standing in this case to challenge the appointment of the temporary board members. And essentially, the relevant regulation was authorized in part by 5 U.S.C. section 301 and promulgated without notice and comment because it relates to the agency's organization and management. And the Supreme Court in Chrysler court said that that statutory section is simply a housekeeping statute that does not authorize substantive rulemaking and to have effective law a regulation must be a substantive or legislative type rule and be promulgated in accordance with rulemaking provisions of the APA and the nexus must exist between the regulation and some delegation of legislative authority by Congress. That simply does not exist here and therefore the petitioner lacks standing to challenge the board member's temporary appointment. Even if he did have standing, however, he still has not presented a reviewable prejudicial challenge for similar reasons that this court has pointed out already in questioning on the direct presentation. Turning instead to the merits of this case, substantial evidence supports the agency's denial of withholding of removal for two reasons. First, the record does not compel the conclusion that a group consisting of Honduran males who reported cartel activity to the police, I'm sorry that's a different case, the other case I was intended to do today, excuse me, it was a former taxi and or transit drivers or business owners. I'm going to tell you that's okay, judges do that from time to time. It was a former taxi and or transit drivers or business owners who cooperated with MS-13 and then stopped. A key portion of this particular social group that was proposed is the term former social distinction, as this court is aware, is a fact-based inquiry and it's it asks whether the group members are perceived as a group by the society as a whole or by the society at large to that at least one of their shared traits makes the group set apart from the rest of society. Good question, in terms of that nexus and this particular social group, the former seems to be the board turned upon very sharply. He did receive a death threat very quickly after returning to Honduras in 2017. And at least that seems to be what the record is showing and he was threatened by these MS-13 members from his old neighborhood who recognized him. So why is that not reasonable suppose that those threats actually related to his status as a former taxi driver who had ceased operating? Your honor, it would be speculative. In the petitioner's description, in his testimony of the event, he states that he was approaching, he was about two blocks away from where his son was, he was visiting his son. He started to see gang members kind of descending on one area, gang members that he, people that he knew to be part of the MS-13 gang. He saw gang members starting to patrol the area, so he kind of believed that this gang meeting was about to take place. When two gang members approach him and tell him you need to leave, you need to disappear yourself, or we're going to kill you, gang members don't say anything about him being a former taxi driver. There's no mention anywhere in the record linking his status as a former taxi driver to this threat that happened in 2017. And importantly, in Toledo Vasquez, this court said that the timing of threats can be relevant in determining the persecutor's motivation. The timing of the threat in this case was pretty linked to a bunch of gang members coming into the and other gang members patrolling the area. It's, there's not a link to, there's not a nexus to his status as a former taxi driver. It really is testimony reads as I was in the wrong place at the wrong time because the gang members were in this area and trying to meet and there were patrollers, it could have been anyone, the patrollers could have approached and said you need to leave or we'll kill you, but they didn't want anyone in that area at that time. Certainly unfortunate, certainly not something that anyone should condone, but it doesn't show a nexus to a group of former taxi or transit drivers. Again, I emphasize that it's important that the petitioner included the term former in this group. The board has said that it is the petitioner's burden to clearly indicate the exact delineation of any particular social group that he wishes for the agency to consider. And so if he wanted to include current drivers, if he didn't want to only be limited to former drivers, he could have made that delineation and he did not. And also to where the petitioner tries to step away from the use of the term former, ignoring or removing former from the group would necessarily remove immutability and petitioner acknowledged that in his briefing before the board on page 88 of the record. And that goes back to Matter of Acosta. And when the board first started addressing the term particular social group, I believe Matter of Acosta was about current taxi drivers was essentially the group in that case. And so formers is a very important part of his particular social group. Council, are you familiar with our decision last year in Alaska? That was a similar situation where I think the group was former gang members and the board said that social distinction hadn't been shown because the evidence that was presented didn't distinguish between former and current gang members and how they're perceived by society. And we affirmed that decision or we denied the petition because of that distinction between former and current. And that seems pretty on point here, I would think. Yes, Your Honor. The government would agree with that statement that Nolasco v. Garland would support the government's position in this case, although gang members and taxi drivers obviously are different groups. The inclusion of the term social group seen in Nolasco was also very important to the resolution of the case. And similarly in this case, former is what makes it as you, as I think the parties agree, former is what makes it immutable, right? You have to have immutability. So former is added to these PSGs to make them immutable. But then you have the added burden of showing that the former members of this group are perceived as distinct by society in a way that's different from the current members of the group, whether it's gang members or taxi drivers or what have you. Correct, Your Honor. And in this case, the evidence simply did not demonstrate that specifically former drivers, as opposed to those who continued driving, were recognized by Honduran society as this distinct group. It did not show that the gangs or anyone else in Honduran society or Honduran society as a whole took notice of former taxi drivers as opposed to current drivers. I'd like to quickly pivot to the denial of cat protection. First, the record does not compel the conclusion that the petitioner established it was more likely than not that he would be tortured in the future if he was returned to Honduras. There is no evidence in the record that the gang has continued to seek him out since he last left Honduras. There's no evidence that the gang has contacted his family members or sought to harm them at all. And this is very important because his expert witness testified that a primary way that the gangs would communicate, a primary way that the gangs would communicate threats to an individual that they were interested in or seek out an individual that they were interested in, was to communicate threats to their family members. And so the absence of any threats, despite numerous letters of support from family members and friends in the record, support shows that the record simply doesn't compel this high standard for cat protection. And furthermore, as part of the more likely than not inquiry, the agency also looked at relocation and found that there wasn't sufficient evidence provided to show that the petitioner could not relocate, that he had not tried to relocate to a safer area like the Gusigalpa, that he had indeed, he had tried, he had relocated within this dangerous department that he lived in, but he had not tried to relocate elsewhere that could be safer for him. I believe the expert witness did talk about how there were areas where there was better police protection, there was more effective police. And further, with respect to acquiescence, what we're looking at here, really, it comes down to the substantial evidence standard. The record does not compel the conclusion that the Honduran government would acquiesce to his torture. While the petitioner did testify that he witnessed gangs and police inclusion, gang members giving drugs to police officers, there's also ample evidence in the record showing that the Honduran government has truly cracked down and made a difference in police corruption and criminal violence. And when this court is looking at its standard of review with respect to the acquiescence inquiry, it's looking for, is there substantial evidence in the record supporting the agency's decision? And the government's position is that here, there is. There is ample country conditions evidence showing that the Honduran government has done a fairly good job at cracking down on gang violence. It's not perfect, no, but the acquiescence standard requires more than the unable or unwilling analysis. It requires that a public official, prior to the torturous activity, have awareness of it and breach his responsibility to intervene. And the evidence, I see that I have run out of time. So thank you, Your Honors. Thank you for your argument today. We'll now hear from the petitioners. Tony, two minutes. Thank you again, Your Honors, and forgive me for going quickly. First, regarding the absence of any threats being evidence of anything, I'd like to point out that, again, that on remand, the judge closed the record. No, there was no opportunity to present any evidence of any continued contact. And that's why we don't know if maybe they did or maybe they didn't, which is another issue that we raise in our appeal. As far as the distinction on former and current, yes, that is significant. And Your Honor is correct, that that is something added for purposes of immutability, because otherwise you can just quit, change your job. But in this case, it is superfluous, as we argue in our brief, because of the fact that the fact that he stopped driving is actually the cessation, sorry, cessation of cooperation. That's what actually gives him the immutability needed in this case. Isn't it incumbent upon you to define the PSG that way then? If it's superfluous, then why did you include it in your definition? I was not the attorney that represented him at the time. Why did his attorney include it? Your Honor, I'm not sure why that is. But we're stuck with it, right? We can't change your PSG on appeal once the board takes issue with it. Correct, Your Honor. But I think that the immigration judge in the first instance correctly interpreted it and actually found what we're really getting at. The asylum statute doesn't require you to spell out word by word what your particular social group is. It just requires you to explain what is the characteristic that you have that is going to subject you to persecution. And obviously, the immigration judge felt that the petitioner sufficiently did that when she granted relief in the first instance. And then the board undid everything and undid so incorrectly. And then it sent it back for the wrong standard, and the judge closed the record. So that's where we are right now when we ask for your help. Thank you for your time. Thank you. And we appreciate your arguments today, Mr. Stokas. We hope that you get well soon. Appreciate the extra effort you made to be here today and recognize the travel that Petitioner's Council made. So thank all of you. Normally, we come down and shake your hand. You know that's the practice, but we're not doing this in this season because of COVID, which is very aptly illustrated by the council here today of the danger that we face. So, but thank you for being here.
judges: James Andrew Wynn, Allison J. Rushing, Diana Gribbon Motz